We proceed then to the day calendar and the first case scheduled for argument is number 173982, International Leisure Products v. Fun Boy. Good morning, Your Honors, and thank you for hearing my case. My name is Brian Leisure Products v. Fun Boy, and I'm here to discuss the appeal of a 12B6 dismissal of a complaint in trade dress infringement. And it actually raises an important issue before this circuit. Basically, the lower court denied, I mean, granted the motion to dismiss based on the articulation of the trade dress elements. Now, as you know, as in our briefs, there's a number of elements that you must allege and plead in your complaint, but the most important one is the design of the elements. If you can't do that, then you really don't get to the other ones. And that's exactly where the lower court decided the case, and that's where the case stopped. In our second amended complaint, we provided an image of our design product, and in one paragraph of the complaint, and in the next paragraph, we described the elements that were protected. In your brief, you seem to take the position that so long as the text correlates with the picture, that that is enough to establish the particular elements of what you're trying to protect. But the description, the textual description, included terms like pleasing appearance or anesthetic proportion that seemed particularly subjective and that's not what you were trying to protect, or what you see as the trade dress. If we talk about the face or the neck or the body, we're talking about the specific face, neck, or body that's in the image, and we're trying to describe it in non-functional terms. And one of the... What is it that you described that isn't just looks like a swan? I mean, what in particular about this swan have you described that makes it different from all other swans? Well, if you're talking about a swan, it's not an anatomically correct swan. If you're talking about... A fun boy swan looks more like a swan than yours does. It has a different kind of neck, which is what is often called a swan's neck. Whereas yours is a vertical neck, and that's one thing that actually is somewhat specific, and that one doesn't seem to be infringed. I'm trying to get at what is it that other than inflatable swan thing is in this description. The body of the swan has a flat, circular, elliptical configuration. That's not a swan. Swans don't look like that. Swans don't have conical tails like we have. Swans do not have these appendages on either side. They can resemble wings, but they are not... I mean, I've never seen a swan's wing look like that. So why did you say possibly resembling a swan? What does that mean? A swan is a swan is a swan. Right, but it doesn't have to be a swan. These trade dress elements could apply to other things. This looks like a swan, but it is not, and I guess what we really mean is it's not an anatomically correct swan. That's why it resembles a swan. Well, right, but something made of rubber is never going to be an anatomically correct swan. It's a depiction of something swan-like or something that calls to mind the idea of a swan, but that can be done in a variety of different ways that look distinct from each other. That's correct. Indeed, you're saying also it's not We're pointing out what we call our swan product, so that's not... Maybe I misspoke a little bit there. Just to clarify that, so you focus on the swan product right now, but you refer to a product line as also having had trade dress as well as packaging and seem to state infringement or to aim towards infringement claims with respect to those as well. Are you in fact aiming to show infringement as to other products? Thank you for your question, Your Honor. This is one of our main points. We are not a product line case. We specifically, and I can understand maybe a little bit of confusion, but we have a product and we have identified the trade dress in paragraphs 13 and 14 of the complaint. We have also stated that these elements are in other products that we have, but we're not asserting as a product line. And there's a distinction in how you analyze a product line case versus a specific product. We're not asserting the packaging. You're saying that there are elements of the swan float toy that also appear in others of your products. Those are all protectable? No. Not unless the entire product meets the definitions of paragraphs 13 and 14. Our intention was in drafting this complaint to show that, to establish that this is our element, that we have been using it, we've been using it in other manners other than the swan product, like in the packaging. And this is not a packaging case. And one of the reasons that this becomes important now is if we're granted a plea, a motion to amend. And how can we amend this complaint to make this more clear? We can take out the packaging. We can make it clear this is not a product line case. Our position is that we have clearly and precisely articulated the trade dress elements of our swan product. What would you say are the key unique elements or protectable elements of your swan product that are subject to infringement here? I would say that it is when you're talking about that, you're referring kind of to distinctiveness. And distinctiveness is the unique combination of the elements as we describe that result into the image that we have. You brought up confusion. How could one be confused between your swan and the fun boy swan? Well, that's a really good question. And that's an issue of fact to be decided if the case were to proceed . . . Why don't you tell me the answer then? The fact is that my client has gotten calls. Said, is this your product? So there's evidence of actual confusion and there's likelihood of confusion. But these are only decided and resolved on more evidence, maybe surveys, maybe declarations. But that's an ultimate issue here. Did you offer the district court a revised complaint, an amended complaint, that would be a third amended complaint that would cure the issues that the district court identified in its decision dismissing . . . No, we have not. And the reason that we did not was because in the defendant's moving papers in the lower court, they said that the issue was functionality. As we said, there was a complaint that we looked at and we found out that there was mistakes in that complaint and we filed an amended complaint as of right prior to even serving it. Then we go before the court and the defendant says, well, these are all functional. So we said, okay, the court let us make this functional amendment, which is the second amended complaint, but there was no . . . You removed all the descriptions of functional elements and replaced them with this. Actually, we took out language that was functional and left a lot of the other language in that was non-functional. So we kind of expanded on that a little bit, but we didn't take out . . . we didn't replace the claims entirely. The issue of how we precisely pleaded and articulated our trade dress was not there. So we have not had the opportunity to amend . . . You didn't seek to amend and you haven't proffered a revised complaint. Is that right? Not to them, but we make the motion to this court and in our reply brief, we suggest and put out a few things that we can do to amend this complaint to make it more clear. Thank you very much. I just have one question for you. What in your description in your complaint is functional that you would take out in an amended complaint? As far as we're concerned, it's not functional. We would make it clear because the problem is that the district court did not combine the image with the image of itself is not enough to support your trade dress elements, which is fine. Then they said the trade dress description of the elements is overly broad. Well, when you put them together, that resolves because now we become . . . I thought in response to Judge Kearney's question, you said we wanted to file an amended complaint that took out the functional aspects. We did. The second amended complaint. So there's nothing in that one that's functional in your view? Correct. We have totally completed non-functionality in all respects. It's all aesthetic, then. Even aesthetic non-functionality, we contend that we have made sufficient allegations such that we are not prohibiting competition if you were to allow these claims to go through. Thank you. Thank you very much. You'll have two minutes on rebuttal. Mr. Mills. May it please the Court, my name is Richard Mills. I'm a partner with McElroy-Deutch, Mulvaney & Carpenter, and I represent the Appellee Fun Boy. As you heard, this is not a packaging case, but a product design case where the trade dress is alleged to be inherent in the design itself. Thus, it fairly and squarely fits within the prescription of Kaufman-Fisher v. F.A.O. Schwartz, which was Judge Lynch's case, where this Court affirmed Judge Lynch's determination that in product design cases, in order to demonstrate trade dress infringement under Section 43 of the Lanham Act, plaintiff must demonstrate that the trade dress is distinctive as to source. The fundamental problem with plaintiff's pleading, indeed its entire case, is that ILP's avian-shaped pool float, whether it's a sleek swan or a stiff-necked goose, is identical in all legal respects to what I think has been referred to as notoriously as Justice Scalia's penguin-shaped cocktail shaker. In Wal-Mart Stores v. Samara, 529 U.S. 205, the late Justice said, almost invariably, even the most unusual product designs, such as a cocktail shaker shaped like a penguin, is not intended to identify the source, but to render the product itself useful and appealing. The removal of functionality from the first or second or third amended complaint was the removal of the label relating to functionality. But in fact, there are terms in there which relate to functionality. It's aesthetic functionality. It's not just that plaintiff has not stated a viable cause of action despite three attempts. It does not have one. Its claim is predicated entirely upon an attempt to corner the market on swan-like products. Humans like to float on swans. There is something inherent in it. Hermes and Mercury are depicted floating on swans. There is something about that design that appeals to human beings. But that design is not the plaintiff's. That design is God's or nature's. And it is no different than the squirrel and leaf patterns in the knitwear case, the Swedish fish in the gummy candy case, that's Malco Leaf v. Promotion in Motion, the Nordic trolls in EFS Marketing, or the wish angels in Hoffman Fisher, Your Honor's case, or the Care Bears in Dorico Products v. Joy Plastics. The product at the center of this case is an ersatz, even hybridized, aquatic bird mink, whose alleged distinguishing features speak entirely to its attractiveness. It looks like there are only two things in both swan photographs that are functional. One is you can fill it up with air so it floats. And the other is there's a place in the middle you can sit, like in an inner tube. That's right, Your Honor. Is there anything else functional about either of the swan depictions? Well, the aesthetics are functional. What does that mean? Aesthetic functionality is the feature of the trade dress that would attract a consumer to it, the beauty of it. In this court, in Wallace International v. Silversmith, there were Baroque designs on the silverware. And this court said aesthetic functionality, the aesthetic function of those designs, is to embellish and attract humans because it's pretty. You want to sell the product to someone who wants to buy it because it's pretty, it's attractive. That is aesthetic functionality. It doesn't help you use the product. It doesn't. It isn't functional in the sense of operational. So in one of the iterations of the complaint, they referred to the stiff-necked thickness of the goose's neck that could be grabbed and held by someone that was floating on it. Well, okay. That is a kind of a functionality. But there are two types of functionality, operational functionality and aesthetic functionality. And when you allege an element that's aesthetically functional, you take your product out of the realm of protection under the land amount. When you get past all the verbiage, do you concede that if you, your company, your client, put out a swan that looked exactly like theirs, you would have a problem? No. No, Your Honor, because even identical copying, even identical copying, knocking off dresses, for example, even identical copying does not establish protection of trade dress under the Land Act. Mightn't it support a New York common law claim for unjust enrichment, for example? An identical copy? I suppose theoretically it is possible that you could support a claim based upon an identical copy, but that is not this case. The real problem with the plaintiff's claim here is that it's ridiculous. The real problem with the plaintiff's claim is that your swan looks nothing like their swan. That's the real heart of the matter. That is absolutely true. The problem is we're looking for ways of defining how they're going to define their trade dress that won't get past the pleading stage when what we all know is that your swan does not look like their swan. It's not an identical copy. It's shaped differently. It has a different kind of neck. The face is a different swan has some aesthetic attractiveness because of the way the face is colored. Matter of taste, some people might like yours better, some people might like theirs better, but anybody walking into a store and seeing the two of them, if they saw that, would say, hey, those are two different swans and would pick the one they liked. If some buyer for a store is only going to get one, they're probably going to pick the one that they like. That's really what's going on here. We're talking around this in an effort to avoid the fact that judges aren't supposed to make the kind of comments that I just made because that's supposedly for a jury down the road somewhere. You know what I think about appeals? I think when one party gives you both pictures and the other one doesn't, the one that gives you both pictures is probably right, and I thank you for providing them. I appreciate that, Your Honor, and I think you're entirely right. The distinctive features are supposed to be that this has a bird-like countenance, black eyes, an orange beak, a duck or oval or circular body, something resembling wind protrusions, a conical tail, and a vertical neck. Right, and I guess what you want to say is that a bird-like face is not something that can be trade-dressed because they can't monopolize things that look like birds. Exactly. Try to make a bird-type toy without one of those elements. It can't be done, and if you can't do it, then you impair the competition of competing manufacturers, and that is precisely what the Lanham Act is designed to prevent, not to protect the monopoly on birds. In regard to the pleadings itself, Aqua Creations versus Hilton Hotel, 487 Federal Appendix 627, again, Judge Lynch, it was your case, and it had to do with technical deficiencies in pleading, and the issue there was whether or not leave to amend should be granted after the second try, and the answer was no. I'm sorry that I knew so much about trade dressing. I remember the Aloysius dolls. Well, Judge Arney's case in Ocher Limited versus Rockwell affirmed the 12B6 dismissal of a copyright infringement claim. You both cite to the Bander case, 834, fed second at 1145. If you do not give the Court the opportunity, the Court below the opportunity to look at an amended pleading, how can you possibly expect an appellate court to rule on whether the Court erred in refusing to do that? Let me ask about that. Let me ask. The first complaint was replaced because functionality arguments were made about the nature of its claims. They then came back and filed another complaint, the operative one here, in which it's being criticized for the generic level of the kind of bird float and subjective nature of some of the claims and saying this is not sufficient to support a trade dress claim. Nonetheless, your opponent didn't have the benefit of the district court's opinion on that type of deficiency in its totally replead complaint before it was dismissed with prejudice. Why shouldn't it have a chance now to replead? The problem is that functionality is presumed. And unless you plead non-functionality, you've omitted a gap in your pleading. It's essentially saying ignorance of the law is an excuse for poor pleading. This is a bad pleading. It was deficient when it was first presented to my prior counsel, who pointed out the defects in it and got it cleaned up. And then it was presented to the Court, and the Court cited several problems with it. I mean, you can go on. They presented it to the Southern District of New York, the same sort of complaint in a related case. And the judge in the Southern District, Judge Pauly, said this doesn't allege functionality. I mean, how many bites of the apple do you get? And the problem isn't functionality. The problem isn't pleading. The problem is exactly what Judge Lynch said it is. They don't have a claim. JUSTICE BREYER. If they were to describe not a bird-like face, but were to describe this particular face, I think they might have a viable trade dress claim because they'd say, well, the face that they have is pretty distinctive. It has not just an orange beak, which many birds have, but this black band that's a rather wide black band above the beak. The problem is if they described that as something distinctive, they'd run into the problem that yours has a very thin black line that's more of an outline. They could describe the orange beak as being a little bit stubby, but yours is kind of more pointy, so that wouldn't work. They could describe their eye as being a sort of black eye with a white pupil, a kind of interesting, distinctive, unusual design. Yours, on the other hand, is a white eyeball with a black pupil. They could say, ah, theirs is distinctive because it has no eyebrow, whereas yours has an eyebrow, and with a kind of sexy sneer, too, to that eyebrow. They could describe and did describe that their neck is vertical and goes at a certain angle. The problem is yours doesn't go at that angle. Yours goes like this instead of like this. They could describe the proportions of their float thing, which is elliptical, but theirs is more round, it seems to me, than yours. Yours is more elongated. They describe the two wing-like extra floats on either side. Okay, you've got extra floats on either side, but yours look quite different. One might say yours look more wing-like. The tail is very similar. So they could describe all those things, but if they described all those things, they'd plead themselves out of court because they wouldn't be able to say that yours has any of those things that are truly distinctive about their design, or whether they're distinctive compared to the world of swans, I don't know. But as compared to yours, if they were trying to say this is a very distinctive appearance, the problem is all the things that make it distinctive yours don't have. It's true. Summer is ending. The giant swan is deflated. The swimming pools will soon close, and this case should be closed as well. Thank you. Thank you, Mr. Mills. Mr. Walmsley, you have two minutes of rebuttal, if you'd like. Thank you. Thank you. First, Judge Lennox, just a couple of things that you said. International Leisure was the one who provided both images, so I guess that presumes that we are correct? No, I didn't find it. It was in your brief anyway. Oh, it's certainly in the SAC, second amendment complaint. Second of all, when you talk about the functionality of the base and for somebody to lay on, and since we're going beyond the pleadings, which we really shouldn't be doing, there are products out there. No, we weren't. You said you provided the picture in the pleading. Okay, but we're talking about the functionality. We're talking about other people riding on birds and swans. There's no, where is that? That's not in any of the pleadings. We can't take judicial notice of the history of Western culture? Well, I suppose you could do that, but that's kind of like besides the point I'm trying to make. And you're going beyond the pleadings saying that, okay, if somebody goes into a store and sees these things side by side, then they can choose. Well, that's actually not the case. These are bought online where they are not side-to-side comparisons, and that creates a huge confusion. We can't submit evidence at this stage of how many calls we got from people, you know, trying to order their swan from our website or from us. So, I mean, there's actual confusion here. As to functionality, which is also very important, there's a big mischaracterization of the Sunny Life case here. In this case, Judge Romans of the Southern District found that we did adequately plead non-functionality under the Inwood test. And the question was, under the Qualitex aesthetic functionality case, whether we also pleaded it. Now, that case is fully briefed and ready for this panel in that subsequent case, and I'd be happy to argue it there. But we have contended that, and we have shown examples of how what are pleading does not prohibit competition. And if you look at the line of cases from Qualitex to Knit Waves that is described in the Maharishi Hardy case, that is just not aesthetically functional here. We don't have, we can plead it because we've shown that these elements and we've pleaded are not necessarily for the product and for competition. Mr. Wamsley? Yes. Your time has expired. Darn. Thank you very much. Sure.